440 So.2d 197 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Gerald JOHNSON, Defendant-Appellant.
No. CR83-175.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
Rehearing Denied November 28, 1983.
*198 Dan McKay, Jr., Bunkie, Michael J. Johnson, Cottonport, for defendant-appellant.
J. Edward Knoll, Dist. Atty., and David Lafargue, Asst. Dist. Atty., Marksville, for plaintiff-appellee.
Before GUIDRY, CUTRER and DOUCET, JJ.
CUTRER, Judge.
On November 24, 1982, defendant was tried by jury for the crime of armed robbery (LSA-R.S. 14:64) and found guilty as charged. He was sentenced to serve five years at hard labor at the Louisiana Department of Corrections without benefit of probation, parole or suspension of sentence.

FACTS
An armed robbery occurred at the E-Z Shop No. 1, located in Bunkie, Louisiana, on July 5, 1982. Ms. Mable Kimmerer, the assistant manager, was on duty at about 10:30 P.M. when the robbery occurred.
Prior to the robbery three men had entered the store three or four times, walked around, then left. The three men were identified as Ross Bowie, Ronnie Ray Christian and Gerald Johnson, the defendant. Each time the men entered the store that evening there had been other customers present. At a point where there were no customers, two menone wearing white pants, no shirt and a black stocking mask, the other in blue jeans, no shirt and the identical maskentered the store and, at gun point, demanded money from Ms. Kimmerer and an associate.
The two men who actively robbed the store were identified as Ross Bowie and *199 Ronnie Ray Christian, the same two men seen earlier in the store with the defendant. A gray strongbox was taken containing approximately two to three hundred dollars, consisting principally of rolled coins.
A short time before the robbery, Ms. Rosa Lee Armstrong, who was enroute to the E-Z Shop, noticed three men standing by the bushes along the railroad track near the store. She noticed that they were without shirts and one of them had on white pants. She knew the three men by name and identified them as being the defendant and the other two men charged with the robbery.
Upon leaving the store, Ms. Armstrong again observed the men lurking by the bushes and, becoming suspicious, she went to a nearby home and telephoned the police. An officer on patrol responded; detecting nothing unusual, he returned to the station. Within five minutes of the policeman's report of no activity, E-Z Shop No. 1 was robbed.
On July 6, 1982, the police issued an arrest warrant for the defendant, based on statements by two persons that defendant had been seen running from the store about the time of the robbery. Following several failed attempts to arrest the defendant at his home, the police station received a call from attorney Dan McKay. He stated that the defendant was his client and that the latter had a statement to make to police. Defendant was read his rights and indicated that he understood them. The defendant then gave a statement of his version of what happened on the night of the robbery. He stated that he was walking down the road when he saw Ross Bowie and Ronnie Ray Christian come out of the E-Z Shop with a shiny pistol and a metal cashbox. The two had no shirts and wore black stocking masks. The defendant stated that he then picked up some clothes near the bushes by the railroad tracks and took them to Ronnie Ray Christian's house. Upon entering the house, he observed Ronnie Ray Christian and Ross Bowie in a bathroom dividing up their loot. He then gave the two men a ride in his car, after which he found some rolled coins left on the seat.
The defendant told the police that he still had the coins at his home, and he consented to their seizure. The amount recovered was $35.50. After receiving the defendant's statement the police delayed arresting him, pending further investigation, but on July 12, 1982, the defendant was arrested and charged with armed robbery.
On November 24, 1982, the defendant was tried by a jury and found guilty. He was subsequently sentenced on January 6, 1983, to the minimum statutory sentence of five years hard labor at the Louisiana Department of Corrections without benefit of probation, parole or suspension of sentence. It is from this conviction that the defendant has presented nine assignments of error:
(1) The trial judge erred in denying the defendant's motion for a continuance;
(2) The trial judge erred in denying the defendant's motion for acquittal;
(3) The trial judge erred in denying the defendant's request for jury instructions;[1]
(4) The verdict of guilty was contrary to the law and evidence;
(5) There was a total lack of evidence to support the verdict;
(6) The trial judge erred in denying a motion for new trial and/or arrest of judgment on the grounds that the prosecution should have been instituted by bill of indictment, rather than by information;
(7) The defendant was denied due process of law and effective representation of counsel in that Louisiana law does not allow the jury to return a verdict finding the defendant guilty as an accessory after the fact when he has been charged with armed robbery;
(8) The trial judge erred in denying a motion in arrest of judgment an/or for *200 new trial on the grounds that the court was improperly constituted; and
(9) The trial judge erred in denying a motion for new trial based on the grounds of newly discovered evidence as to a material witness' testimony.
Those assignments are addressed as the defendant argued them in brief.
ASSIGNMENTS OF ERROR NUMBERS 2, 4 and 5
(2) The trial judge erred in denying the defendant's motion for acquittal;[*]
(4) The verdict of guilty was contrary to law and evidence;
(5) There was a total lack of evidence to support the verdict.
These assignments relate to the sufficiency of the evidence supporting defendant's conviction and will be discussed conjunctively.
The defendant was convicted for armed robbery. As he was not one of the two men who entered the store and actually took the money at gun point, his guilt may only be established by his actions as a principal. LSA-R.S. 14:24 provides:
"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
LSA-R.S. 14:64(A) defines armed robbery as follows:
"(A). Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
Therefore, the State was required to prove the following: The defendant was concerned in the commission of a theft,[2] of anything of value,[3] from the possession or immediate control of another, by use of force or intimidation, and while armed with a dangerous weapon.[4] The evidence previously set forth in the factual recitation clearly establishes that an armed robbery occurred. The sole element of the crime at issue is whether the defendant was "concerned in the commission" of that crime.
The defendant argues that the State's evidence of his participation in that robbery was entirely circumstantial and failed to *201 exclude every reasonable hypothesis of his innocence. LSA-R.S. 15:438. Our Supreme Court, after several varying approaches, has recognized the appropriate standard of review in cases such as this in light of both the due process standards of Jackson v. Virginia, 433 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and LSA-R.S. 15:438, to be as follows:[5]
"An appellate court reviewing the sufficiency of evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime." (Emphasis in original.)
State v. Sutton, 436 So.2d 471 (La.1983). Also, see State v. Chism, 436 So.2d 464 (La.1983).
Applying the aforementioned standard of review, we find that the State has met its burden of proof as to the defendant's participation as a principal in the armed robbery at issue. The evidence amply supports this finding.
Defendant was positively identified by the victim as having entered the store with the two active participants in the robbery (Christian and Bowie) three or four times on the night of the crime (committed at approximately 10:30 P.M.). Ms. Armstrong saw defendant behind some bushes with Christian and Bowie thirty minutes prior to the robbery. When she passed that area a short time later, the three men were in the same location, which was near the store subsequently robbed, and the men had removed their shirts. Their suspicious behavior prompted her call to the Bunkie Police Department. When Christian and Bowie entered the store wearing masks, they had removed their shirts. The officers had been told by two witnesses that they had seen the defendant after the robbery running in the area of the store, while carrying something in his arms. Defendant, in his voluntary statement, admitted that he saw Christian and Bowie leaving the store carrying both a gray box and a pistol. He also admitted that the two had stockings on their heads and were shirtless and that he went back to the bushes and retrieved their shirts, hat and sunglasses.
Defendant further admitted that he took the clothes to Christian's home and was directed to the bathroom where Christian and Bowie were dividing the money. Defendant subsequently drove the two to another location, where he left them. Defendant stated that Bowie left "rolls of quarters, pennies and nickels" in the car when they departed. At the time of his initial statement the defendant directed the officers to his home, where he turned over to them $35.50 of the stolen change.
The only reasonable conclusion from these facts is that defendant was a principal to the armed robbery in that he was concerned in and aided and abetted Christian and Bowie in the crime committed. No other reasonable hypothesis exists. Also, see State v. Bindom, 410 So.2d 749 (La. 1982); State v. Johnson, 365 So.2d 1267 (La.1978).
This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER 9
(9) The trial judge erred in denying a motion for new trial based on the grounds of newly discovered evidence as to a material witness' testimony.
At the hearing on a motion for new trial, the defendant elicited testimony from Dr. John Ubanks, a psychiatrist and appraiser of students from Rapides Parish, who tested Rosa Lee Armstrong in November 1976, and found her to be an educable mental retardate. Dr. Ubanks estimated her "mental age," at the time of trial, to be ten and one-half to eleven years of age. Dr. Ubanks confirmed, however, that a person *202 of such mental age could identify a person or persons out of a group of people, could tell right from wrong and could communicate what she had seen or heard.
The defendant argues that the only evidence that tends to show the defendant's pre-robbery participation is Rosa Lee Armstron's suspect testimony. We disagree. The assistant manager, Ms. Kimmerer, also saw the defendant associate with the actual perpetrators prior to the robbery. There was also the testimony of Officer Franklin, which indicated that two local Bunkie residents had seen the defendant run from the E-Z Shop carrying something. Further, defendant's own statement incriminated him, as did his possession of money stolen from the store.
Defense counsel contends that a new trial should have been granted defendant, as the jury had not been informed of Ms. Armstrong's lessened mental capacity. Defendant further argues that the record, on post-trial motions, is full of inconsistencies in Mr. Armstrong's statements. However, it was noted by Judge Bennett that, being sworn and under oath on two separate occasions, Ms. Armstrong held to the same story. The trial judge did not find Ms. Armstrong's mental deficiencies to be sufficient grounds to set aside the trial. We agree.
LSA-C.Cr.P. 851(3) provides that the court, on motion of the defendant, shall grant a new trial whenever:
"New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;"
The newly-discovered evidence must be such that it would probably have changed the verdict of guilty, and the test to be employed is not simply whether another jury "might" bring in a different verdict, but whether the new evidence is so material that it ought to produce a different result from the verdict reached. State v. Huizar, 414 So.2d 741 (La.1982); State v. Talbot, 408 So.2d 861 (La.1981); State v. Molinario, 400 So.2d 596 (La.1981). Additionally, it is well settled that the decision on a motion for a new trial rests within the sound discretion of the trial judge, who is accorded considerable latitude in evaluating the reliability of evidence and its potential impact on the verdict. His ruling will not be disturbed on appeal in the absence of a clear showing of abuse of his discretion. State v. Graham, 422 So.2d 123 (La.1982); State v. Huizar, supra; and State v. Molinario, supra.
Under the instant facts, we are unable to say the new evidence is so material that it would produce a different result from the verdict reached. Clearly the trial judge did not abuse his discretion in denying defendant's motion for a new trial. This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 7
(7) The defendant was denied due process of law and effective representation of counsel in that Louisiana law does not allow the jury to return a verdict finding the defendant guilty as an "accessory after the fact" when charged with armed robbery.
Defendant alleges that LSA-C.Cr.P. art. 814(A)(22) denies him due process of law, as it does not include "guilty of accessory after the fact" as a responsive verdict to the charge of armed robbery.[6] This is merely an attempt to re-argue the evidence, as defense counsel argues that the evidence failed to support the conviction for armed robbery, but the jury "felt" that the defendant had done something wrong and *203 must be punished. Defendant contends that art. 814 unconstitutionally denied the jury the "option of convicting [defendant] as accessory after the fact."
The only verdicts responsive to armed robbery are mandated by art. 814,[7] and the trial court has no authority to add to those verdicts. State v. Thibodeaux, 380 So.2d 59 (La.1980). In this case, the jury had been informed by defense counsel, the State and the trial judge as to the crime of "accessory after the fact" and that it was not responsive to a charge of armed robbery. They were also instructed that, if they could only find defendant guilty of accessory after the fact, they were required to acquit him. The record reflects that the trial court properly instructed the jury as to the State's burden of proof, and we can find no support for defendant's allegations that his due process rights have been infringed by the Legislature's refusal to include "guilty of accessory after the fact" as a responsive verdict to an armed robbery charge.
As stated by our Supreme Court in State v. Marse, 365 So.2d 1319, 1322 (La.1978):
"Defendant's ultimate protection is that if the state fails to prove the elements of the offense charged or of those offenses for which responsive verdicts are prescribed by La.C.Cr.P. art. 814, he is entitled to an acquittal."
We previously held in addressing defendant's assignments of error numbers 2, 4 and 5, that the State had adequately met its burden of proof, and we cannot find that the defendant's constitutional rights were abridged. The Louisiana responsive verdict system has withstood previous constitutional challenges, and it easily withstands this one. See, State v. Matthews, 380 So.2d 43 (La.1980), and the cases cited therein. This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER 8
(8) The trial judge erred in denying a motion in arrest of judgment and/or for new trial on the grounds that the court was improperly constituted.
Prior to trial, Judge James N. Lee recused himself on his own motion and appointed Marksville City Court Judge, B.C. Bennett, Jr., as Judge ad hoc. The record does not reflect any reasons given for the recusal; however, the defendant's counsel at that stage of the proceedings was Mr. Dan McKay, Judge Lee's son-in-law and an associate of the judge's son's law firm, Nelson M. Lee and Associates.
The defendant admits the relationship between counsel and judge, but he adds in brief the facts that Judge Lee is a resident of Bunkie and a former city judge there. The robbery at issue occurred in Bunkie, and the victims, defendants and witnesses are all from Bunkie, including several police officers and the Chief of Police. Based on these factors, defense counsel argues that the reason for recusal may be bias, prejudice or personal interest as defined in LSA-C.Cr.P. art. 671(1).[8] If this were the reason *204 for recusal, defendant argues that the court would be improperly constituted based upon C.Cr.P. art. 675. That article, in pertinent part, states:
"When the ground assigned for the recusation of the judge of a district court having one judge is that he is biased, prejudiced, or personally interested in the cause, the judge shall appoint a district judge of an adjoining district to try the motion to recuse. When any other ground is assigned for the recusation of such a district judge, he may appoint either a district judge of an adjoining district, or a lawyer domiciled in the judicial district who has the qualifications of a district judge, to try the motion to recuse....."
LSA-C.Cr.P. art. 676[9] authorizes a district judge who recuses himself to appoint a judge ad hoc to try the case. In this instance, by appointing Marksville City Judge B.C. Bennett, Jr., as Judge ad hoc, Judge Lee complied with statutory mandate if the grounds for recusal were not bias, prejudice or personal interest. There is nothing in the record to indicate that they were.
From the record and briefs, it is obvious that a legitimate ground for recusal existed, that being the relationship between counsel and judge. There is no evidence that any other ground existed. The burden of proving that Judge Lee recused himself for other reasons lay with the defendant. LSA-R.S. 15:439. He has not met that burden in the instant case. Since the relationship was a legitimate ground for recusal, the judge's actions were proper, and the allegation that the court was improperly constituted is without merit.

ASSIGNMENT OF ERROR NUMBER 1
(1) The trial judge erred in denying the defendant's motion for a continuance.
The record indicates that, immediately prior to trial on July 5, 1982, Mr. McKay made an oral motion for continuance based on the absence of two witnesses.
LSA-C.Cr.P. art. 707 states:
"A motion for continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.

"Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice."
This article has been strictly construed by Louisiana jurisprudence, such that a motion for continuance must be in writing and must allege the specific grounds upon which it is based. Where no written motion for continuance appears of record, the denial thereof will not be considered.[10]State v. Robicheaux, 412 So.2d 1313 (La.1982); State v. Jones, 340 So.2d 563 (La.1976).
The grounds asserted by defendant, in his request for a continuance, were that two of his witnesses were not present. This ground is specifically recognized in LSA-C. Cr.P. art. 709, which sets forth certain requirements:

*205 "A motion for a continuance based upon the absence of a witness must state;

(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and

(3) Facts showing due diligence used in an effort to procure attendance of the witness."
The record indicates that the defendant failed to comply with any of these requirements. This reason and the fact that the motion was oral are sufficient to uphold the trial court's decision.
A decision to grant a continuance is placed in the discretion of the trial court and will not be disturbed absent an abuse of that discretion. State v. Washington, 407 So.2d 1138 (La.1981). In this instance there was clearly no abuse. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 6
(6) The trial judge erred in denying a motion for new trial and/or arrest of judgment on the grounds that the prosecution should have been instituted by bill of indictment, rather than by information;
Defendant contends that the trial court erred in denying his motion for a new trial and/or an arrest of judgment on the grounds that his prosecution was improperly instituted by bill of information, when a bill of indictment should have been utilized.
Article I, § 15 of the Louisiana Constitution and Article 382 of the Code of Criminal Procedure require that the prosecution be instituted by an indictment by a grand jury only when the offense is punishable by death or by life imprisonment. All other criminal prosecutions in a district court are to be instituted by indictment or by information. Defendant was charged and convicted for the crime of armed robbery, which is punishable by a maximum term of imprisonment of ninety-nine (99) years. LSA-R.S. 14:64.
Defense counsel argues that the possible sentence, when added to the accused's age, would exceed the expected life span of human beings, such that armed robbery is punishable by life imprisonment. This argument has previously been addressed and rejected by our Supreme Court. State v. Johnson, 365 So.2d 1267 (La.1978); State v. Qualls, 353 So.2d 978 (La.1977). We, in a similar vein, reject defendant's contention. The grand jury indictment is clearly mandated only for those offenses which the Legislature has chosen to expressly punish by death or life imprisonment.
Accordingly, this assignment has no merit.
For these reasons the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The record does not reveal what those instructions were or that defendant objected to the instructions read by the trial judge. See LSA-C.Cr.P. art. 841. Further, defendant provides no argument on this assignment, and it is, therefore, abandoned on this appeal. State v. Washington, 430 So.2d 641 (La.1983).
[*] At his jury trial defendant phrased this pre-verdict motion as being for a directed verdict of acquittal. This is an unknown procedure for jury trials in Louisiana, which does allow a motion for acquittal in bench trials. LSA-C. Cr.P. art. 778. However, effective on the date of defendant's trial (November 24, 1982), were the newly enacted provisions of LSA-C.Cr.P. art. 821. That article allows the trial judge to enter a post-verdict judgment of acquittal in jury trials when the evidence fails to support the conviction entered. Defendant's motion was, therefore, technically defective inasmuch as it was made after the State had rested its case but prior to the rendering of the jury's verdict. Nevertheless, the issue sought to be addressed by the motioninsufficiency of evidenceis encompassed by assignments four and five and is dealt with by the argument herein.
[2] The term "theft" is defined in LSA-R.S. 14:67 as:

"Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential."
[3] The term "anything of value" is defined in LSA-R.S. 14:2(2) as:

"`Anything of value' must be given the broadest possible construction, including any conceivable thing of the slightest value, movable or immovable, corporeal or incorporeal, public or private and including transportation, telephone and telegraph services, or any other service available for hire. It must be construed in the broad popular sense of the phrase, not necessarily as synonymous with the traditional legal term `property.' In all cases involving shoplifting the term `value' is the actual retail price of the property at the time of the offense."
[4] The term "dangerous weapon" is defined in LSA-R.S. 14:2(3) as:

"`Dangerous weapon' includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm."
[5] This metamorphosis is revealed in the following cases: State v. Williams, 423 So.2d 1048 (La.1982); State v. Graham, 422 So.2d 123 (La. 1982); and State v. Austin, 399 So.2d 158 (La. 1981).
[6] LSA-R.S. 14:25 provides, in pertinent part, as follows:

"An accessory after the fact is any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment.
"An accessory after the fact may be tried and punished, notwithstanding the fact that the principal felon may not have been arrested, tried, convicted, or amendable to justice."
[7] Those responsive verdicts are

Armed Robbery. Guilty. Guilty of simple robbery. Guilty of attempted armed robbery. Not guilty.
[8] LSA-C.Cr.P. art. 671 in its entirety provides:

"In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
(2) Is the spouse of the accused, of the party injured, of an attorney employed in the cause, or of the district attorney; or is related to the accused or the party injured, or to the spouse of the accused or party injured, within the fourth degree; or is related to an attorney employed in the cause or to the district attorney, or to the spouse of either, within the second degree;
(3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;
(4) Is a material witness in the cause;
(5) Has performed a judicial act in the case in another court; or
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.
In any cause in which the state, or a political subdivision thereof, or a religious body is interested, the fact that the judge is a citizen of the state or a resident of the political subdivision, or pays taxes thereto, or is a member of the religious body is not of itself a ground for recusation."
[9] LSA-C.Cr.P. art. 676 provides, in part:

"A. When a district court judge, or a judge of a separate juvenile court or of a family court, recuses himself, he shall appoint a judge ad hoc to try the case in the manner provided by Article 675 for the appointment of a judge ad hoc to try a motion to recuse....
* * * * * *
D. The judge ad hoc has the same power and authority to dispose of the case as the recused judge would have."
[10] Even though the Code of Criminal Procedure provides that the application for continuance shall be by written motion, the trial court's denial of defendant's oral motion for a continuance can be properly reviewed by this court where the occurrences that allegedly made the continuance necessary arose unexpectedly, so that defense counsel has no opportunity to prepare a written motion. See State v. Parsley, 369 So.2d 1292 (La.1979). However, this exception to C.Cr.P. art. 707 is not applicable in this instance.