*222
 

 STATEMENT OF CASE
 

 MICHAEL E. KIRBY, Judge.
 

 | t On September 26, 2008, the State charged Kashie Fernandez with armed robbery and aggravated kidnapping. Defendant appeared for her arraignment, and the trial court modified the terms of her bond obligation, ordering that she be placed on a twenty-four curfew supervised through the TSAP program. The minute entry from this setting does not indicate whether defendant entered a plea.
 

 Subsequently, the State amended count two of the bill of information to second degree kidnapping, and defendant pled not guilty to the amended charge. Evidence was taken on defense motions over three days; the court denied the motion to suppress the identification and found probable cause.
 

 On May 13, 2009, the trial court revoked defendant’s original bond, removed her from the TSAP program, and increased her bond.
 

 On the day of trial, the defense moved for a continuance arguing that several articles in the Times-Picayune that month had unfairly prejudiced defendant. The trial court denied the motion, and the case proceeded to trial. The jury found the defendant guilty of the responsive verdict of simple robbery and guilty as charged of second degree kidnapping. At the sentencing hearing, defendant’s mother, Kim |aJefferson, her pastor, Henry Jounson, Jr., and her uncle, Jewel Rushing, testified for her.
 

 For simple robbery the trial court sentenced the defendant to seven years at hard labor in the custody of the department of corrections, and for the second degree kidnapping, the trial court sentenced defendant to forty years at hard labor, the first two years of the sentence were ordered to be served without benefit of probation, parole, or suspension of sentence. The sentences were ordered to be served concurrently. The defendant filed a motion to reconsider the sentences.
 

 The state filed a multiple bill of information alleging that the defendant was a second felony offender, having previously been convicted of theft in 2002. Defendant pled guilty to the multiple bill on July 9, 2009. The court vacated its previous sentence for second degree kidnapping and re-sentenced defendant to forty years at hard labor without benefit of probation, parole, or suspension of sentence. Defendant filed a motion to reconsider the multiple bill sentence, which the court denied.
 

 STATEMENT OF FACT
 

 Natalie Ross testified that in May of 2008 she was living in Slidell, Louisiana, with her fiancé, Wendell Cousin, and their infant daughter. Ross ran a successful hair salon from her house. Ross recounted how she grew up in the Gentilly Woods section of New Orleans, along with Cousin, whom she had known practically her entire life. Kashie Fernandez also grew up in the same neighborhood, and Ross had known her since she was thirteen years old.
 

 Fernandez telephoned Ross in early May. The two talked at length catching up, and then Fernandez told Ross that she wanted to come to her house for a visit.) s Ross gave her directions. Ross thought it strange that Fernandez would want to come to her house after they had talked for so long, especially since Fernandez lived in Baton Rouge. Fernandez and her boyfriend stopped by the house later in the day for a brief visit of only about ten minutes. Apparently, the two almost left before coming in, as Ross saw the car leaving driveway as she came outside.
 

 About a week later, early in the day on May 12, Ross received another telephone
 
 *223
 
 call from Fernandez, who related that she was in New Orleans and needed a ride. Ross was busy and unable to leave right away. She did nothing about the call. Over the course of the day, Ross received four more telephone calls from Fernandez. At 1:50 p.m., Fernandez called to see where Ross was and what was taking her so long; she called again shortly after 3:00 p.m. and again about an hour later and finally at 4:15 p.m. After telling Fernandez that she was coming to get her, Ross telephoned Cousin, who was in New Orleans East, and asked him to get Fernandez. Ross gave him Fernandez’s phone number, and he called Fernandez to get her exact location.
 

 At trial, Ross identified phone records detailing the times that the calls were received.
 

 Wendell Cousin testified that Ross called him and asked him to pick up Ka-shie Fernandez because Ross was unable to do so. Cousin agreed to pick up Fernandez. He called her on the phone, and she told him that she was in the Little Woods area off of Curran Boulevard by Sand Street. She was not able to provide a specific address and described the intersection where she was located.
 

 When Cousin arrived at the location, he observed Fernandez and her boyfriend, whom he had met the week before in Slidell when they came to visit. Cousin pulled the car over and briefly looked down while he cleared the passenger |4seat of some personal belongings. When he looked up, he saw two men with guns standing at his window. Kashie’s boyfriend opened the passenger door and got in the car. He was armed and asked Cousin where the money was. He took six hundred dollars from Cousin, which Cousin said he had earned by painting at a neighbor’s house earlier in the week.
 

 Then the two men in the street opened the driver’s side door and told Cousin to get out. They searched him and removed his wallet and all of his belongings. Fernandez was standing with her boyfriend on the other side of the car. She looked calm.
 

 Cousin was then instructed to enter the backyard of the adjacent house. When they got to the backyard, he was made to lie on the ground face down, and the men bound his hands and feet and tied them together. There were four men altogether. While Cousin was on the ground, one of the men told Cousin that “she said, ‘You all have it.’ And we know that your fiancé and your baby are at the house. And if we don’t get nothing, we’re going to kill both of them.” Cousin believed the man was referring to Kashie.
 

 When Cousin heard this, he cussed the men out, and one of them hit him in the head. After that, three of the men carried him to the car, which was backed up in the driveway. Upon reaching the car, they dropped him on the ground, and he heard one of them say, “Hold on, a neighbor.” A few seconds later he said, “Okay”, and then they threw him in the trunk. The car drove off, with the radio playing loudly and people were talking, but he could not hear what anyone was saying.
 

 IsAfter a few minutes, the car stopped and everyone got out. Cousin heard the door open, and someone said, “Take care of your business and wipe the car down when you’re finished.” Cousin believed that he was going to be killed.
 

 Cousin was able to loosen the knots behind his back and get his arms and legs free. The car began to move again, and when it stopped, Cousin pulled the inside trunk release, got out, and ran. Cousin saw a woman and her son standing on a nearby corner. He asked to use her phone and called Ross to tell her to get out of the house. Then Cousin called a friend,
 
 *224
 
 who arrived about forty-five minutes later and took him home. He found Ross across the street, safe. Cousin explained that he did not call the police right away because he was in a rage and wanted only to do something to hurt Fernandez.
 

 Ross testified that after Cousin called her, she grabbed her baby and ran to a neighbor’s house; Cousin arrived about an hour later. Ross testified that he was acting crazy and talking about getting back at Fernandez. She was able to calm him down, and after first calling the Slidell Police Department, they traveled to New Orleans to report the crime.
 

 Detective Darrell Doucette testified that he encountered Wendell Cousin and Natalie Ross when they arrived at the Seventh District Police Station to report a robbery and kidnapping. Cousin appeared very upset. Doucette observed that Cousin had a rope tied to one wrist. He could see indentions and abrasions from where his wrists were bound together. The rope was collected as evidence and admitted at trial. Photographs taken of Cousin at the station were presented to the jury. Later, Detective Doucette returned to the area and interviewed the few residents on the street. No one recognized a photograph of the defendant.
 

 | fiCousin and Ross were able to identify the defendant only by her first name and part of her last name. Detective Doucette was able to identify Fernandez by visiting her neighborhood as directed by Cousin. With this information he compiled a photographic lineup. Cousin identified her from the lineup, and Detective Doucette obtained a warrant for her arrest.
 

 Detective Doucette traveled with Wendell Cousin to Little Woods where the robbery took place, which Doucette explained remained mostly unoccupied after Hurricane Katrina. Detective Doucette identified photographs of the driveway and surrounding area that were taken by the crime lab.
 

 The defense called Don Carter, an investigator, as a witness, and the State moved for a sidebar. In chambers, the court asked defense counsel to state the basis for calling the witness. Counsel explained that he engaged Don Carter to investigate Wendell Cousins’ statement that he earned the six hundred dollars taken in the robbery by painting for a man who lived across the street from his grandparent’s house. Counsel explained that Mr. Carter determined that there was only one house across the street from Cousin which was not abandoned, and that he interviewed the owner who denied knowing Wendell Cousin. Counsel explained that he had issued a subpoena for the neighbor at the previous trial setting but did not see him at that time. Counsel stated that he had placed a telephone call to the subject the previous evening but did not get a response.
 

 The State objected to Investigator Carter testifying, on the basis that his testimony would be hearsay. The trial court agreed and ruled that Investigator Carter’s testimony would be inadmissible hearsay. Defense counsel noted his objection and moved for a mistrial on the basis that Ms. Fernandez was being 17denied the right to present a defense. The trial court denied the motion, and the defense rested.
 

 ERRORS PATENT
 

 A review of the record for errors patent reveals one. Neither the docket master nor the minute entries indicate that the defendant ever entered a plea on the charge of simple robbery. Although the docket master and minute entry from October 16, 2008, reflect that the defendant was arraigned, there is no indication that
 
 *225
 
 she actually entered a plea to either charge.
 
 [1]
 

 La.C.Cr.P. art. 8B1 provides in pertinent part that a defendant must be present at arraignment and when a plea is given. La.C.Cr.P. art. 555 provides, inter alia, that failure to arraign the defendant or the fact that he did not plead is waived if the defendant enters the trial without objecting thereto. In such a case, it shall be considered as if he had pleaded not guilty.
 

 The defendant has shown no prejudice resulting from the patent error. She did not object to the omission at her arraignment, at trial or on appeal. Because her plea of not guilty can be assumed, the failure of the record to show that she was arraigned on the charges in this case is harmless error.
 
 State v. Perez,
 
 98-1407 (La.App. 4 Cir. 11/3/99), 745 So.2d 166.
 

 ASSIGNMENT OF ERROR NUMBER 3
 

 Defendant contends that the evidence was insufficient to support her convictions for second degree kidnapping and simple robbery. When issues are | ^raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.
 
 State v. Marcantel,
 
 2000-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55;
 
 State v. Shaw,
 
 2007-1427 (La.App. 4 Cir. 6/18/08), 987 So.2d 398.
 

 In
 
 State v. Bridgewater,
 
 2000-1529 (La.1/15/02), 823 So.2d 877, the Louisiana Supreme Court discussed the standard of review for claims raising the sufficiency of the evidence as follows:
 

 In reviewing the sufficiency of the evidence to support a conviction, we follow the due process standard of review enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under that standard, “the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.”
 
 State v. Captville,
 
 448 So.2d 676, 678 (La.1984). That standard “preserves the role of the jury as the factfinder in the case but it does not allow jurors ‘to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.’ ”
 
 State v. Pierre,
 
 93-0893 at p. 5 (La.2/3/94), 631 So.2d 427, 429. The jury is not allowed to engage in speculation based merely upon “guilt by association.” 93-0893 at pp. 5-6, 631 So.2d at 429. In order for the trier of fact to convict and for the reviewing court to affirm a conviction, the totality of the evidence must exclude reasonable doubt.
 

 Under Jackson, all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.
 
 See State v. Jacobs,
 
 504 So.2d 817, 820 (La.1987). When circumstantial evidence forms the basis of the conviction, the totality of such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. However, “Mypotheses of innocence are merely methods for the trier of fact to determine the existence of a reasonable doubt arising from the evidence or lack of evidence.”
 
 State v. Shapiro,
 
 431 So.2d 372, 389 (La.1982) (on reh’g) (Lemmon, J., concurring). This circumstantial evidence rule is not a separate test from the Jackson standard; rather, La. R.S. 15:438 merely “provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational
 
 *226
 
 juror could have found defendant guilty 1 nbeyond a reasonable doubt.”
 
 State v. Wright,
 
 445 So.2d 1198, 1201 (La.1984). “Although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror’s reasonable doubt formula, it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence.”
 
 State v. Chism,
 
 436 So.2d 464, 470 (La.1983).
 

 Id.,
 
 pp. 8-9, 823 So.2d at 889.
 

 Defendant contends the evidence was insufficient to establish that she was directly concerned in the commission of either Cousin’s robbery or his second degree kidnapping. She argues that, at best, the State’s evidence demonstrates that she got Cousin to go to Sand Street after which she left and that there was no evidence that she intended to participate in anything that happened after she left. She further asserts there is no evidence that she agreed to or assisted with the use of force, or the plan to take Wendell Cousin anywhere in the car.
 

 In order to convict a defendant of simple robbery, the State must prove that defendant: (1) took something of value (2) belonging to another (3) from the person of another (4) by use of force or intimidation. La. R.S. 14:65;
 
 State v. Florant,
 
 602 So.2d 338 (La.App. 4 Cir.1992).
 

 Second degree kidnapping, in pertinent part, is the forcible seizing and carrying of any person from one place to another, wherein the victim is imprisoned or kidnapped when the offender is armed with a dangerous weapon. La. R.S. 14:44.1(A)(5) & B(l).
 

 La. R.S. 14:24 defines “principals” as “[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crimef.]”
 

 | ^Generally, courts reviewing a defendant’s conviction as a principal look to evidence of actions preceding the offense, during the offense, and after the offense. Often, the State is able to show a defendant helped plan the offense at issue, or knew of the plan before the offense, and elected to participate.
 
 See, e.g., State v. Peters,
 
 553 So.2d 1026 (La.App. 4 Cir.1989) and
 
 State v. Johnson,
 
 440 So.2d 197 (La.App. 3 Cir.1983).
 

 Although La. R.S. 14:24 provides that all persons “concerned in the commission of a crime” are principals, there are important qualifications, as discussed by the Louisiana Supx-eme Court in
 
 State v. Pierre,
 
 93-0893 (La.2/3/94) 631 So.2d 427:
 

 Only those persons who knowingly participate in the planning or execution of a crime are principals.
 
 State v. Knowles,
 
 392 So.2d 651 (La.1980). Mere presence at the scene is therefore not enough to “concern” an individual in the crime.
 
 State v. Schwander,
 
 345 So.2d 1173 (La.1977). Moreover, “an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state.”
 
 State v. Holmes,
 
 388 So.2d 722, 726 (La.1980).
 

 Id.
 
 p. 4, 631 So.2d at 428.
 

 In
 
 State v. Bridgewater,
 
 the Court also noted:
 

 As a general rule, “liability [as a principal] will not flow merely from a failure to intervene;” however, “silence in the face of a friend’s crime will sometimes suffice when the
 
 immediate proximity
 
 of the bystander is such that he could be expected to voice some opposition or
 
 *227
 
 surprise if he were not a party to the crime.” 2 Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law § 6.7(a) (1986) (Emphasis supplied).
 

 Id.,
 
 2000-1529, pp. 11-12, 823 So.2d at 891.
 

 Viewing the evidence in the light most favorable to the state, we find a reasonable juror could readily have concluded that the defendant was a principal to the robbery and kidnapping of Wendell Cousin. Fernandez’s actions preceding |T1and during the offense point directly to her knowing and voluntary participation in both crimes.
 

 Although she was not armed and said nothing during the robbery, she was in the immediate proximity of the vehicle when the robbery took place and voiced no concern over her boyfriend’s actions. A rational juror could have concluded that by repeatedly calling Ross, Fernandez meant to lure Ross or Cousin to an isolated and nearly abandoned area, thereby evidencing that she knew of the offense before hand, helped to plan it and was in fact a principal to the crime.
 

 Also, a reasonable jury could have found that the evidence proved Fernandez’s involvement dated back to her to initial visit the week before the robbery and that the basis for Fernandez’s earlier visit was to identify and locate Ross and Cousin’s Slidell home.
 

 Although Fernandez was out of sight after Cousin was taken into the backyard, viewing the evidence in the light most favorable to the prosecution, a reasonable juror could have found sufficient evidence to demonstrate that Fernandez was “concerned with the commission of’ the second degree kidnapping.
 

 First, any trier of fact should have been impressed by the fact that the perpetrators had the forethought to bring rope to bind the victim. It is clear that the perpetrators tied up Cousin to transport him easily without fear of his escaping. Accordingly, the evidence suggests that from the outset the plan included “the forcible seizing and carrying of’ the victim “from one place to another, wherein the victim is imprisoned or kidnapped.”
 

 That Fernandez did nothing to conceal her involvement in the commission of the crime and stood by at the scene with no effort to conceal her identity, and that |12she was involved with the armed men, suggests she did not fear being identified to the police. This suggests that she believed Cousin was not going to be released.
 

 Although Fernandez was out of sight when Cousin was tied up and put in the trunk, a reasonable juror could also have concluded that it was Fernandez who backed the automobile into the driveway from the street, thereby facilitating the kidnapping.
 

 The evidence offered at trial points convincingly to the defendant’s knowing and voluntary participation in both the robbery and the kidnapping. This assignment of error lacks merit.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 Defendant contends that the trial court abused its discretion when it denied her motion to continue the trial based on prejudicial pre-trial publicity. The record contains copies of two articles from the Times-Picayune website dated May 12 and May 13, 2009. These articles suggest that there was a link between two murders and Kashie Fernandez, as Wendell Cousin was a relative of the deceased couple. The two articles also reference the facts of Fernandez’s case.
 

 Generally, motions for continuance are within the sound discretion of the trial court. La.C.Cr.P. art. 712.
 

 Where there is a reasonable likelihood that prejudiced news media publicity
 
 *228
 
 prior to trial, will prevent a fair trial, the trial judge should continue the case until the threat abates or he should transfer it to another locality not so permeated with publicity_The defendant, however, must show that he will be specifically prejudiced if the continuance is not granted. (Citations omitted).
 

 State v. Huizar,
 
 414 So.2d 741, 748 (La.1982). In
 
 Huizar,
 
 the Court concluded, “The defense did not convincingly demonstrate that careful voir dire examination 11sof the prospective jurors could not result in a fair and impartial jury-”
 
 Id.
 
 at 748.
 

 In
 
 State v. Young,
 
 623 So.2d 689 (La.App. 4 Cir.1993), an article appeared in the newspaper which discussed the case and made mention of the defendant’s previous criminal history. The defendant moved to continue the trial, and the court took the motion under advisement, stating that if voir dire revealed that the prospective jurors had been contaminated, the court would take appropriate action. During voir dire, five members of the jury pool indicated that they had read that day’s newspaper. All stated they had not discussed the article with any other member of the pool. During voir dire the court dismissed the jurors who had read the story. On appeal, this Court found that the trial court did not abuse its discretion by denying the motion to continue the trial.
 

 Here, in addressing the defendant’s motion, the trial court noted that there was no mention of the case in that day’s newspaper and there had not been any media on the subject that week. The court stated that it would address the subject during voir dire and denied the motion.
 

 The transcript of the voir dire was not designated for appeal and is not contained in the record; however, the record does not reflect that any jurors were seated over defense objection or that any defense challenges for cause were denied.
 

 Defendant has not demonstrated that she was unable to obtain a fair and impartial jury through the use of careful voir dire examination. The assignment of error lacks merit.
 

 |
 
 uASSIGNMENT OF ERROR NUMBER 2
 

 Defendant contends that the trial court erred in failing to allow Don Carter to testify regarding the results of his investigation. Defendant suggests that her constitutional right to present a defense was impinged by the court’s eviden-tiary ruling.
 
 [2]
 

 Louisiana jurisprudence recognizes that under compelling circumstances a defendant’s right to present a defense may require admission of statements which do not fall under any statutorily
 
 *229
 
 recognized exception to the hearsay rule.
 
 State v. Van Winkle,
 
 94-0947 (La.6/30/95), 658 So.2d 198;
 
 State v. Gremillion,
 
 542 So.2d 1074 (La.1989);
 
 see also Chambers v. Mississippi,
 
 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). This right to present a defense, however, does not require the trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice.
 
 State v. Mosby,
 
 595 So.2d 1135 (La.1992); La. C.E. art. 403. Also, Louisiana Code of Evidence Article 103(A) provides, in part, that an error may only be predicated upon a ruling which excludes evidence if a substantial right of the party is affected.
 

 In
 
 Gremillion,
 
 the defendant was prevented from introducing a statement by the victim to an investigating officer regarding the circumstances that led to his violent death and failed to implicate the defendant, who was a close friend of the victim. The Louisiana Supreme Court reversed the conviction. The Court agreed that the statement was hearsay and that it did not meet any applicable exception. However, citing
 
 Chambers v. Mississippi,
 
 the Court concluded that normally inadmissible hearsay may be admitted if it is reliable, trustworthy and relevant, and if the exclusion of such evidence would compromise the defendant’s right to present a defense. In
 
 Van Winkle,
 
 the defendant was accused of murder and was prevented from introducing testimonial evidence in support of the defense that an upstairs neighbor to the victim committed the crime, despite the existence of physical evidence supporting the defense. The conviction was also reversed.
 

 In contrast to the foregoing cases, in
 
 State v. Stukes,
 
 2005-0892 (La.App. 4 Cir. 10/25/06), 944 So.2d 679, this Court rejected the defendant’s claim that his right to present a defense was violated when he was not allowed to introduce hearsay evidence that was cumulative to his own testimony and the testimony of the investigating officer who took the defendant’s statement.
 

 In
 
 Van Winkle
 
 and
 
 Gremillion,
 
 the excluded evidence was highly relevant in proving that someone else was responsible for the offense and created the compelling circumstances required in order to justify reversing the convictions.
 
 Stukes,
 
 on the other hand, demonstrates that despite a defendant’s claim that excluded evidence violated his right to present a defense, the defendant must demonstrate a tangible basis for concluding that his substantial rights were affected.
 

 Defendant contends that the excluded testimony was critical because the case turned on Cousin’s testimony and Don Carter’s testimony was defendant’s |1fionly means of challenging Cousin’s credibility. Accordingly, defendant argues that her conviction should be reversed.
 

 We do not find the hearsay testimony was so critical that the trial court should have allowed it. Cousin testified at length during the trial, and defendant conducted a full and unfettered cross examination of him. The ability to challenge Cousin’s credibility was certainly an element of the defense; but how Mr. Cousin earned the money that was stolen in the robbery was not central to question of defendant’s guilt. The evidence sought to be introduced falls well short of the type of evidence that was excluded in
 
 Van Winkle
 
 or
 
 Gremillion
 
 and provided reason for reversing the defendant’s conviction. This assignment of error lacks merit.
 

 ASSIGNMENT OF ERROR NUMBER 4
 

 Defendant contends her sentences are excessive. In
 
 State v. Smith,
 
 2001-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4, the
 
 *230
 
 Court set forth the standard for evaluating a claim of excessive sentence:
 

 Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that “[n]o
 
 law
 
 shall subject any person to ...
 
 excessive ... punishment.”
 
 (Emphasis added.) Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.
 
 State v. Sepulvado,
 
 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering.
 
 State v. Bonanno,
 
 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion.
 
 State v. Cann,
 
 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been mox-e appropriate but whether the trial court abused its broad sentencing discretion.
 
 State v. Walker,
 
 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462;
 
 cf. State v. Phillips,
 
 02-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906.
 

 See also
 
 State v. Johnson,
 
 97-1906 (La.3/4/98), 709 So.2d 672;
 
 State v. Batiste,
 
 2006-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810;
 
 State v. Landry,
 
 2003-1671 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235.
 

 In
 
 Batiste,
 
 at p. 18, 947 So.2d at 820, this Court further explained:
 

 An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La.C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed.
 
 State v. Landry, supra; State v. Trepagnier,
 
 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181. However, as noted in
 
 State v. Major,
 
 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813:
 

 The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resen-tencing is unnecessaxy even when there has not been full compliance with Art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the l'eeord supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
 

 If the reviewing court finds adequate compliance with art. 894.1, it must then determine whether the sentence the trial court imposed is too severe in light of the particular defendant as well as the circumstances of the case, “keeping in mind that maximum sentences should be resexwed for the most egregious violators of the offense so chai-ged.”
 
 State v. Landry,
 
 2003-1671 at p. 8, 871 So.2d at 1239. See also
 
 State v. Bonicard,
 
 98-0665 (La.App. 4 Cir. 8/4/99), 752 So.2d 184.
 

 Convicted of second degree kidnapping and sentenced as a second felony offender, defendant was subject to a sentence of between ten and eighty years. La. R.S. 14:44.1; La. R.S. 15:529.1(A)(l)(a). On the chai'ge of simple robbeiy, defendant was subject to a maximum sentence of seven years.
 

 Defendant argues that when examining the natui’e of the crime, the nature of the offender, and sentences imposed for similar offenses, that her sentences are excessive. Defendant also contends that because the entfre forty year sentence was | ^ordei-ed to be sei-ved without benefit of parole, when La. R.S. 14:44.1 only l-equires that the first two years be seiwed without
 
 *231
 
 benefits, that it is excessive. She also claims that she was not deserving of a maximum sentence for simple robbery.
 

 In support of her argument that she was not deserving of the sentences she received, defendant notes that since her previous conviction in 2004, she completed her G.E.D. and went to nursing school. She notes that at the time of the offense she was employed and raising her two children, a teenager and a seven year old.
 

 Defendant argues that her conduct during the offense was not severe, noting that she was not armed, made no threats against the victim’s family, and was not present when any were made or when Cousin was driven off in the trunk of his car. She also notes that Cousin was not seriously injured during the commission of the offense. In light of the foregoing, she argues that the only explanation for the length of her sentences was that the trial court was unduly influenced by the pretrial publicity.
 

 Defendant notes that similar or less severe sentences have only been upheld in cases involving more serious conduct than that present here. In
 
 State v. Colbert,
 
 2007-0947 (La.App. 4 Cir. 7/23/08) 990 So.2d 76, the defendant received the maximum sentence for attempted second degree kidnapping, twenty years, and this Court’s review of comparable sentences was as follows:
 

 [I]n
 
 State v. Woodberry,
 
 95-2402 (La. App. 4 Cir. 12/27/96), 686 So.2d 984, this court upheld a thirty-five-year sentence for the completed crime of second degree kidnapping where the defendant grabbed the victim at gunpoint, carried her off in his car, sexually assaulted her, and then robbed her. Other courts have upheld maximum sentences for the completed crime of second degree kidnapping where the kidnapping occurred in connection with other crimes. See
 
 State v. Office,
 
 2007-193 (La.App. 3 Cir. 10/3/07), 967 So.2d 1185 (the defendant shot|i3at the victim as the victim tried to escape; he was convicted of second degree kidnapping and armed robbery)
 
 State v. Moore,
 
 37,935 (La.App. 2 Cir. 1/28/04), 865 So.2d 227 (the defendant was convicted of armed robbery, second degree kidnapping, and attempted second degree murder, where he shot the victim and left the victim for dead; his consecutive maximum sentences on all counts were affirmed);
 
 State v. Brock,
 
 37,487 (La.App. 2 Cir. 9/26/03), 855 So.2d 939 (the defendant, convicted of aggravated burglary and second degree kidnapping, entered the victim’s home, robbed her, forced her to go with him, then left her for dead; his concurrent maximum sentences on all counts were affirmed);
 
 State v. Lefeure,
 
 02-592 (La.App. 5 Cir. 10/29/02), 831 So.2d 398 (kidnappings occurring during a robbery of a store; the defendant was convicted of armed robbery, second degree kidnapping, and aggravated burglary; the court upheld the maximum sentences on each count but amended the sentences to run concurrently rather than consecutively).
 

 Colbert,
 
 pp. 30-31, 990 So.2d 94, (footnote omitted).
 

 In
 
 Colbert,
 
 as here, the kidnapping occurred during an incident involving other crimes which was one of the factors supporting imposition of the defendant’s maximum sentence.
 

 In
 
 State v. Fountain,
 
 2007-1004, pp. 6-7 (La.App. 4 Cir. 1/23/08), 976 So.2d 763, 766-767 this court reviewed cases where the maximum sentence for simple robbery was imposed:
 

 In
 
 State v. White,
 
 35,235 (La.App. 2 Cir.10/31/01), 799 So.2d 1165, the court imposed on the defendant a seven year maximum sentence for simple robbery
 
 *232
 
 to be served consecutively with sentences for conspiracy to commit simple robbery and second-degree battery where the victim sustained broken jaws on both sides of the face requiring thousands of dollars in medical bills for reconstructive surgery.
 

 In
 
 State v. Wilson,
 
 660 So.2d 571 (La.App. 2 Cir.1995), the court imposed on the defendant, a first felony offender, a seven year maximum sentence where the defendant acted without provocation, using a ruse to lure the victim to him, used a gun during the robbery and before robbing the victim wrestled him to the ground and repeatedly struck him in the face. The defendant had previous misdemeanor arrests and convictions for possession of drugs and drug paraphernalia.
 

 In
 
 State v. Capano,
 
 466 So.2d 649 (La.App. 5 Cir.1985), the court imposed on the defendant the maximum seven year sentence where the defendant, who was sixteen at the time of the offense, had an extensive juvenile record and the pre-sentence investigation indicated that he committed crimes on a regular basis and that he would likely commit another crime if not committed to an institution for an extensive period of time.
 

 In
 
 State v. Fountain,
 
 the robbery occurred in the parking lot of a convenience store. Defendant beat the victim until he was able to take his wallet and the victim suffered multiple facial fractures and a broken nose. Defendant also had a lengthy criminal history.
 

 Here, despite the fact that defendant did not actually brandish a weapon or participate in binding Cousin, the trial court found that defendant was the “lynchpin,” noting that it was defendant who knew Cousin and Ross and that without her, the crime would never have taken place.
 

 As further justification for defendant’s lengthy sentences, the court was impressed with the fact that even after defendant had visited with Cousin and Ross at their home and witnessed the life they were trying to make for themselves, she did not hesitate to proceed with the crime and telephoned Ross repeatedly in effort to complete the crime.
 

 The court found that defendant’s callous disregard for the likely consequences of her actions upon Cousins or Ross overcame the positive testimony made on her behalf at the hearing.
 

 The court’s comments at sentencing also reflect that it was disturbed by the perpetrators comments (“Take care of your business and wipe the car down when you’re finished.”) indicating they anticipated Cousin would be killed rather than released. Here, the court’s focus on the potential ramifications of the defendant’s | ⅞1 actions was in keeping with other courts’ emphasis on “the element of violence and danger to the person” in assessing the nature and gravity of an offense.
 
 State v. Taves,
 
 2003-0518, p. 5 (La.12/3/03), 861 So.2d 144 (per curiam).
 

 Mindful that “the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion,” it is clear from the sentencing transcript that the trial court did not reach its decision capriciously or arbitrarily.
 
 State v. Walker,
 
 p. 2, 799 So.2d at 462. Although the sentences imposed were quite lengthy and even though Wendell Cousin did not suffer significant physical injury, as was the case in several cases where the perpetrator received a lengthy sentence, and even though defendant did not have an extensive criminal background, the trial court’s reasons for sentencing defendant are supported by the record, and it is clear that the trial court
 
 *233
 
 did not abuse its discretion in sentencing defendant.
 

 On the record before us, and particularly considering the reasons articulated by the court, we find that this midrange sentence of forty years without benefit of parole is neither grossly disproportionate to the crime nor a needless imposition of pain and suffering upon this defendant. Likewise, defendant’s seven year sentence for simple robbery is not excessive. The assignment of error lacks merit.
 

 CONCLUSION
 

 For the reasons discussed above we affirm defendant’s conviction and sentence.
 

 AFFIRMED.
 

 [1]
 

 . As noted previously, the defendant was subsequently arraigned and entered a plea of not guilty to the amended charge of second degree kidnapping.
 

 [2]
 

 . In passing, the defendant claims that the testimony was admissible suggesting, without citation or authority, that it was not hearsay because it was offered as "impeachment testimony, not for the truth of the matter asserted.” A prior inconsistent statement by a witness can be admitted pursuant to La. C.E. art. 607 D(2) which permits the introduction of a prior inconsistent statement made by the witness for the limited purpose of attacking the witnesses’ credibility. However, Article 607 is not implicated here as Cousin did not make the statement sought to be introduced.
 

 Hearsay is defined as an oral or written assertion, other than one made by the declar-ant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. C.E. arts. 801 A(l) and 801 C. Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. Hearsay evidence is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability.
 
 State v. Everidge,
 
 96-2665, p. 7 (La. 12/2/97), 702 So.2d 680, 685.