McDonald, j.
| gThis is an appeal of a judgment in favor of Melvin Spears, Jr., former head football coach at Grambling State University (Grambling). Mr. Spears was hired by Grambling to be its head coach on January 1, 2005. Mr. Spears had a five-year contract of employment with Gram-bling, with a starting yearly salary of $150,000.00 and incremental increases based on the football team’s performance. During Mr. Spears’ tenure as head football coach multiple incidents occurred that culminated in Mr. Spears being given a letter of termination from Dr. Horace Judson, President of Grambling, on December 18, 2006, stating that Mr. Spears was an at-will employee and that his employment would end on December 31, 2006.
Thereafter, Mr. Spears filed suit against the Louisiana Board of Supervisors for the University of Louisiana System (the Board) on February 8, 2007. Mr. Spears asserted that, despite his successful performance, he was terminated from his position as head coach at Grambling without cause. Mr. Spears asserted that the Board made false statements about him that damaged his reputation, and that the Board’s actions were done for the purpose of harming Mr. Spears, his reputation, and his coaching career, in violation of the abuse of rights doctrine. Mr. Spears asserted he was not given the 60-day advance notice of termination required by his contract, and that at the time of termination he had three years remaining in his employment contract. Mr. Spears prayed for damages in the amount of $13,000.00 per month for the remaining 36 months of his contract. Further, Mr. Spears asserted that Grambling had refused to pay him the wages due, despite his demand, and thus, he asked for 90 days penalty wages, as well as attorney fees.
The Board answered the petition, asserting that it had terminated Mr. Spears with cause. The Board asserted that Mr. Spears had wrongfully administered drug Istests to student football players at Gram-bling; that Mr. Spears had sent letters to some parents informing them that their sons had failed the drug test, although some of those football players had not been drug-tested, and some of them had gotten inconclusive test results; that Mr. Spears had renamed the Grambling training room for persons formerly affiliated with Grambling without following Gram-bling and University of Louisiana System rules, then denied his actions when questioned by Grambling Athletic Director Troy Mathieu; that Mr. Spears caused investigation of the Grambling football program by the NCAA after he allowed a football player to use his vehicle and allowed one or more ineligible football team members to play Alabama A & M in Alabama, causing Grambling to be fined by the NCAA; that Mr. Spears directed Grambling’s football team to continue to score in an unsportsmanlike manner against the Prairie View A&M University football team in a game although Gram-bling was already far ahead in the game; that Mr. Spears made insensitive public comments about Alcorn State University in Mississippi after Alcorn wanted to reschedule its game with Grambling in the wake of Hurricane Katrina in 2005; that Mr. Spears failed to conduct the football program, or himself, in the manner expected of a head coach at a large state university; and other actions and omissions that subjected Grambling to investigations by the NCAA, criticism by national and local media, complaints from parents, complaints from Grambling staff members, and a demoralized football team.
A four-day jury trial was held in this matter in May of 2011. At the close of Mr. Spears’ case, the trial court granted a *395 directed verdict dismissing his abuse of rights doctrine claim. After trial, the jury-returned a verdict rejecting Mr. Spears’ defamation claim, finding that the Board breached its contract with Mr. Spears, and awarding Mr. Spears $449,500.00 for the remainder of his salary under the contract, $11,000.00 in penalty wages, and $139,000.00 in attorney fees. Mr. Spears filed a motion for judgment notwithstanding the verdict, or alternatively, a |4new trial or additur, and the trial court judge granted the motion for additur, increasing the penalty wages award to $54,000.00. The Board is appealing the judgment, and makes the following assignments of error.
1. The trial court committed legal error by sequestering Grambling’s former president, Dr. Horace Judson.
2. The trial court committed legal error by excluding from evidence local newspaper articles showing the bad publicity Melvin Spears actions had generated.
3. The jury committed manifest error by failing to find that Grambling had just cause to terminate Mr. Spears’s employment, despite clear evidence to the contrary.
4. The jury committed manifest error by awarding penalty wages to Mr. Spears.
5. The jury improperly awarded excessive attorneys’ fees to Melvin Spears.
ASSIGNMENT OF ERROR NO. 2
In this assignment of error, the Board asserts that the trial court abused its discretion in excluding two newspaper articles from evidence. Further, the Board asserts that this ruling tainted the jury verdict, such that the appellate court should conduct a de novo review of the case. The employment contract provided that Gram-bling could fire Mr. Spears for violations of Grambling policies and regulations, which were included in the definition of just cause. The Grambling Unclassified Personnel Handbook provides that “[ajcts which are detrimental to the University are a violation of University policy.” Thus, the Board asserts, if Mr. Spears took any action that was detrimental to Grambling, the university had just cause to fire him. The newspaper articles were evidence that Mr. Spears’ actions were detrimental to Grambling, the Board asserts, because his actions garnered media attention that painted Grambling in a bad light, and they were direct evidence that Mr. Spears’ actions had been detrimental to Grambling.
|fiThe trial court excluded the articles on the basis of lack of foundation and hearsay. However, newspaper articles are self-authenticating documents. Pursuant to La. C.E. art. 902(6), “[ejxtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to ... [pjrinted materials purporting to be newspapers or periodicals.” Thus, as the newspaper articles were self-authenticating, there was no need for Grambling to lay a foundation to introduce the newspaper articles into evidence. As to the hearsay exception, La. C.E. art. 801(C) provides that hearsay is a statement, other than one made by the declar-ant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. The newspapers were not offered into evidence to prove the truth of the matter, but rather, to show evidence of the adverse impact of Mr. Spears’ actions on Grambling’s reputation. The lack of foundation and hearsay objections should have been overruled by the trial court.
The trial court abused its discretion in excluding the newspaper articles from evidence. However, these newspaper articles *396 were proffered into evidence by the Board and thus, are available to us in our review of the evidence.
ASSIGNMENT OF ERROR NO. 3
In this assignment of error, the Board asserts that the jury committed manifest error in failing to find that Gram-bling had just cause to terminate Mr. Spears’ employment, despite clear evidence to the contrary. The employment contract provides in pertinent part:
1.2 Head coach shall be responsible, and shall report, directly to the University’s Director of Athletics (the “Director”), and shall confer with Director or the Director’s designee on all administrative and technical matters. COACH shall also be under the general supervision of the University’s President.
⅜ ⅜ ⅜ ⅝ ⅝
1.4 COACH agrees to represent the University positively in public and private forums and shall not engage in conduct that reflects adversely on the University or its athletic program.
* * * *
9.1 COACH shall abide by the rules and regulations of the NCAA, SWAC and University rules. If found in violation of NCAA regulations, COACH shall be subject to disciplinary or corrective action as set forth in the NCAA enforcement procedures (NCAA Constitution 11.2.1). COACH may be suspended for a period of time, without pay, or the employment of COACH may be terminated if COACH is found to be involved in deliberate and serious violations of NCAA, SWAC and University regulations (NCAA Constitution 11.2.1).
9.2 COACH shall abide by the State of Louisiana Code of Government Ethics, University Policy and Regulations, and the policies and regulations of the University of Louisiana System. In public appearances he shall, at all times, conduct himself in a manner that befits a University official and shall always attempt to create goodwill and a good image for the University as determined by the President.
10.0 Termination
10.1 Either party may terminate this agreement with just cause prior to the expiration of its terms by giving sixty (60) days written notice to the other party. Should the University terminate this agreement without just cause, it shall be liable to COACH for liquidated damages in the amount of the remaining year(s) base salary and incentives at the time of termination under the terms of the agreement. Liquidated damages shall be computed as the number of months or year(s) remaining under the terms of the agreement as specified in Section 2, times the amount of the monthly installments specified in Section 3. The University shall not be liable for any payment of contingent benefits or car allowance past the effective date of termination. The University shall make payments for liquidated damages monthly.
The University may, at its sole option, elect to obtain its release from the obligation to pay COACH any money under this agreement by paying to COACH a lump sum equal to the monthly amount due as specified in Section 3, times the number of months remaining under the terms of the agreement as specified in Section 2; lump sum amount shall be discounted at six percent (6%). The University reserves the right to exercise its option of a lump sum payment at any time during the terms of this agree *397 ment. Should COACH’S appointment as Head Football Coach at GSU be terminated during the terms of this agreement, he shall make reasonable efforts to obtain suitable full time gainful employment in the Division 1 coaching profession.
Should COACH secure full time employment of any type, the liquidated damages described in this agreement shall be reduced |7by the amount of income received by him from said employment, as described above shall be cause for the release of the University from any obligation to make further payments.
Should COACH’S employment be terminated for just cause, the University shall not be liable for any payments or benefits specified in this agreement past the effective date of termination. Just cause for termination shall include, but not be limited to, a final conviction of violation of Federal, State, or local laws, sanctions for violations of NCAA or Conference regulations, or violations of University policies and regulations. Just cause shall not include misdemeanor traffic tickets. (Emphasis added.)
The Grambling Unclassified Personnel Handbook, Chapter III, Section E, Professional Conduct and Relations with Clients, provides in pertinent part:
The University is a community of professionals. As such, the University has the obligation to maintain an environment conducive to the sharing and learning of information. Unclassified staff are to conduct themselves in a professional and collegiate manner consistent with being a citizen of the larger University community. Acts which are detrimental to the University environment are a violation of University policy.
The termination letter to Mr. Spears, dated December 18, 2006, provides in pertinent part:
This is to advise you that based on the recommendation of the Athletic Director, your unclassified at-will employment at Grambling State University will officially end at the close of business on December 31, 2006.
Until that time, pursuant to the University of Louisiana Board of Supervisors Policy and Procedures Memorandum FS-II1.XX.-1.VH.C, you are hereby placed on mandatory compensatory leave through December 31, 2006, effective immediately. You must vacate your office today, December 18, 2006.
A thorough review of the record reveals that Mr. Spears was insubordinate to Dr. Judson, in his position as President of Grambling, made public comments that impugned the reputation of Grambling and generated unfavorable publicity, and caused the University to be investigated by the NCAA.
In particular, after Alcorn State University sustained damage from Hurricane Katrina and expressed interest in postponing its scheduled football game against IsGrambling, Mr. Spears publicly made derogatory comments about Alcorn State University for wanting to postpone the game. These negative comments by Mr. Spears created bad publicity and negative attention for Grambling. When Mr. Spears was involved with drug testing the Grambling football team, he sent letters to the parents of team members, which caused concern by the Grambling administration for the privacy rights of the students. When Dr. Judson questioned Mr. Spears about the drug testing, Mr. Spears was defiant about his actions. After Mr. Spears tried to rename the Grambling training facility on his own, without au *398 thorization from either the Athletic Director, Troy Mathieu, or Dr. Judson, he was questioned about his actions and was uncooperative with the administration. Thus, we find that the Board clearly had just cause to terminate Mr. Spears from his position as head football coach at Grambling.
However, the Board failed to follow the terms of the contract of employment by failing to give Mr. Spears the required 60 days notice of his termination. Thus, Mr. Spears was owed 60 days wages from the notice of his termination. However, Grambling’s violation of the 60 days notice provision did not give Mr. Spears the right to payment for the remainder of the term of the contract. The jury committed manifest error in awarding Mr. Spears the remainder of his salary for the full term of the employment contract. Thus, we must reduce the award of $449,500.00 in salary for the remainder of Mr. Spears’ contract down to the 60 days wages owed under the contract.
The contract provided for a base salary of $150,000.00 on January 1, 2005. In consideration of certain performance benchmarks, the salary increased. For attaining at least seven wins per season, Mr. Spears’ annual salary increased by $6,000.00 per year at the end of each football season. Further, Mr. Spears was entitled to nonrecurring salary increases (essentially bonuses) for meeting other benchmarks, such as coaching in the Bayou Classic, the State Fair Classic, the | {¡Procter and Gamble Classic, and Division 1A Games, and for winning the SWAC (Southwestern Athletic Conference) Championship.
In Mr. Spears’ motion for judgment notwithstanding the verdict or, alternatively, a new trial or additur, he asserted that he was entitled to 90 days penalty wages at $600.00 per day, or $54,000.00, based on the evidence at trial. However, our review of the evidence shows that this daily rate of pay is too high. Mr. Spears testified at trial that as of January 1, 2007, he would have made a base salary of $156,000.00 and that he would have earned incentives based on the football team’s performance. However, he was terminated from his job effective December 81, 2006; thus, he was not entitled to 2007 earnings for his daily rate of pay calculations.
Mr. Spears did not testify as to his pay in 2006, nor did he enter pay stubs or other evidence into the record to show his rate of pay in 2006. However, in his petition, he asserted that he was paid $13,000.00 per month, which amounts to $156,000.00 per year. A salary of $156,000.00 per year, divided by 365 days per year, amounts to $427.40 per day. Mr. Spears was given notice on December 18, 2006 that his employment would end effective December 31, 2006, and he was paid for the days from December 19 to December 31, 2006, thus he was paid for a total of 13 days after notice of termination. He is owed the remaining 47 days of pay.
Mr. Spears’ daily rate of pay, $427.40, multiplied by 47 days, equals $20,087.80. Thus, we reduce the award of $449,500.00 in salary for the remainder of Mr. Spears’ contract, to the remaining 47 days wages owed under the contract, which totals $20,087.80.
ASSIGNMENT OF ERROR NO. 1
In this assignment of error, the Board asserts that the trial court committed legal error by sequestering Grambling’s former president, Dr. Horace Judson, who 110was Grambling’s designated representative at the trial, and that the trial court’s sequestration of Dr. Judson is subject to an abuse of discretion standard of review. However, we find that the record clearly *399 shows that the jury committed manifest error in failing to find that Mr. Spears was terminated for just cause, despite the fact that Dr. Judson was sequestered at the trial, thus we find that this assignment of error is moot.
ASSIGNMENT OF ERROR NO. 4
In this assignment of error, the Board asserts that the jury committed manifest error by awarding penalty wages to Mr. Spears. The Board relies upon the case of Winkle v. Advance Products & Systems, Inc., 98-694 (La.App. 3 Cir. 10/28/98), 721 So.2d 983, in its argument. In that case the plaintiff, Ms. Winkle, was fired by Advance Products & Systems, Inc., (APS) which timely issued her final paycheck but refused to pay her accrued vacation time. APS withheld the vacation pay on several grounds, including purported offsets and credits. Ms. Winkle asserted she was entitled to carry over certain vacation hours to following years, and as a result, she was entitled to payment for that accrued vacation time upon termination. The trial court found APS owed Ms. Winkle for her earned, but unused vacation time, as this was found to constitute an amount due under the terms of employment, and awarded Ms. Winkle penalty wages under La. R.S. 23:632. Winkle, 721 So.2d at 985.
APS appealed the trial court judgment, and the appellate court reversed the award of penalty wages. The appellate court noted that the penalty wage statute must be strictly construed and may yield to equitable defenses and, as a bona fide dispute existed as to whether Ms. Winkle was entitled to carry over unused vacation, an award of penalty wages was improper. Winkle, 721 So.2d at 990-91.
The Board asserts that in this case, as in Winkle, there was a good faith dispute as to whether Grambling owed Mr. Spears any post-termination pay, thus Lithe jury ■ committed manifest error in awarding Mr. Spears penalty wages. However, this case differs from the Winkle case due to the contract provision that provided that Mr. Spears was entitled to an award of 60 days wages for early termination of the contract. The issue of whether there was just cause to terminate Mr. Spears has no bearing on the entitlement to 60 days wages for early termination of the contract.
Louisiana Revised Statute 23:631A(l)(a) provides for payment of a discharged employee as follows:
Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
Louisiana Revised Statute 23:632 provides for the liability of an employer for failure to pay wages:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee’s daily rate of pay, or else for full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall *400 have elapsed from time of making the first demand following discharge or resignation.
Based upon La. R.S. 23:632, Mr. Spears was entitled to 90 days penalty wages. Using the daily wage rate of $427.40, multiplied by 90 days, the penalty wage award amounts to $38,466.00. We find that the trial court committed manifest error in awarding 90 days penalty wages of $56,000.00. The penalty wage award of $54,000.00 is reduced to $38,466.00.
| ^ASSIGNMENT OF ERROR NO. 5
In this assignment of error, the Board asserts that the jury awarded excessive attorney fees to Melvin Spears. The jury awarded Mr. Spears $139,000.00 in attorney fees. However, Mr. Spears presented no evidence regarding the amount of attorney fees he incurred in this case. In Blanton v. Malkem Intern. Corp., 628 So.2d 178, 181 (La.App. 2 Cir. 1993), the trial court awarded a former employee attorney fees of $15,465.75 due to an employer’s failure to timely pay wages owed at termination. On appeal, the appellate court reduced the attorney fees award to $10,000.00 after finding no evidence in the record to support the award and finding the legal principles in the case were not unduly complex and the documentation of fees owed was not great. Blanton, 628 So.2d at 184.
In this case, there was no documentation of the attorney fees owed by Mr. Spears, and the legal issues involved in this case were not unduly complex. Thus, an attorney fees award of $139,000.00 is excessive in this case. However, this case did include a four day trial, along with many depositions and motions. Even though no time sheets or evidence were produced as to the time the attorney spent on the case, we can set the attorney fees by examining the record. See Cochran v. American Advantage Mortg. Co. Inc., 93-1480 (La.App. 1 Cir. 6/24/94), 638 So.2d 1235, 1240.
Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court’s own knowledge. Rivet v. State, Dept. of Trans, and Dev., 96-0145 (La.9/5/96), 680 So.2d 1154, 1161. These factors are derived from Rule 1.5(a) of 11sthe Rules of Professional Conduct, which require that a lawyer’s fees be reasonable. Rivet, 680 So.2d at 1161.
After a review of the record, and keeping in mind the factors outlined in Rivet and the requirement that the attorney fees be reasonable, we reduce the attorney fees award from $139,000.00 to $34,500.00.
CONCLUSION
For the forgoing reasons, the jury verdict finding that Mr. Spears was terminated without just cause as head coach of Grambling State University is reversed. The award of three years wages for the time remaining on Mr. Spears’ contract, $449,500.00, is reduced to the 47 remaining days of wages due for termination for just cause under the contract, $20,087.80. The penalty wage award of $54,000.00 is reduced to $38,466.00. The attorney fees award of $139,000.00 is reduced to $34,500.00. Costs of this appeal are assessed against Mr. Spears.
*401 REVERSED IN PART, AMENDED IN PART, AND RENDERED.
KUHN, J., concurs.
PETTIGREW, J., concurs.