SANDRA CABRINA JENKINS, Judge.
| t Defendant, Ortiz Jackson was charged by grand jury indictment with the second degree murder of Mark Westbrook; he was tried by a twelve person jury and found guilty as charged.
The evidence presented at trial revealed that Westbrook was shot while hugging Terakeitha Calloway outside of Lucky’s Lounge in New Orleans on July 10, 2008. Calloway was also injured in the shooting but survived her wounds. Defendant timely appeals his sentence and conviction on the grounds that (1) he was denied his constitutional right to due process of law when he was convicted on a non-unanimous verdict; (2) he was denied his constitutional right to present a defense and to confront and cross examine witnesses against him; and (3) comments made by the prosecution during closing arguments tainted jurors against the defense and constituted reversible error.
Finding no errors patent or merit to any of the defendant’s assignments of error, we affirm the defendant’s conviction and sentence.
| ..STATEMENT OF THE CASE
Ortiz Jackson was jointly indicted with Samuel E. Mack in November of 2008 for the murder of Mark Westbrook and the aggravated battery of Terakeitha Callo-way. The cases were severed prior to trial, and the State elected to try Jackson solely on the murder charge. The jury, in a 10-2 vote, found Jackson guilty of second degree murder as charged. Prior to sentencing, the trial court denied defendant’s motion for a new trial and his motion for post-verdict judgment of acquittal. He was sentenced to serve life in prison at hard labor without the benefit of parole, probation, or suspension of sentence. It is *1158 from this conviction and sentence that the defendant now appeals.
FACTS

Eyewitness testimony

James Bradley was one of the State’s key witnesses at trial. He explained that the victim, Westbrook, was like a brother to him; the two had been close Mends since childhood and were living and working together at the time of Westbrook’s murder. According to Bradley, he and Westbrook were having drinks at Lucky’s Lounge on July 10, 2008, when Westbrook got into a verbal argument with another friend, Roderick “Rock” McKinney, who had cut in on his dance partner. According to Bradley, that argument ended when Westbrook got into a second argument with another bar patron, Samuel Mack. Bradley also observed Mack talking on the phone around the time of their argument.
Bradley testified that he and Westbrook were getting ready to leave the bar when Westbrook stepped out of the car to hug and continue making amends with McKinney. Terakeitha Calloway also walked up to hug Westbrook. Bradley |swas waiting for Westbrook to get back inside the car when he heard a gunshot. He then looked up and observed the defendant, Jackson, put a gun to back of Westbrook’s head and fire a second shot. Bradley estimated being approximately three to four feet away from Westbrook when the shooting occurred.
Edwin Nelson also testified as an eyewitness to the shooting at trial. He explained that he arrived at Lucky’s Lounge shortly after Westbrook’s argument with McKinney had ended. He followed West-brook, McKinney, and Mack outside to find out what was going on when he observed another argument between West-brook and Mack. Nelson also observed Mack place a call from his cell phone during this argument. Nelson never saw Samuel Mack again that night.
Later, as Nelson sat in his car, preparing to leave behind Westbrook and Bradley, Nelson observed McKinney walk up to Westbrook’s window and ask if everything was okay. Westbrook then got out of his car and gave McKinney “dap” and a hug. Nelson was changing his radio when he heard the first shot; he then looked up to see Jackson standing behind Westbrook with a gun pointed at his head. He observed the defendant shoot Westbrook a second time as he was falling. Nelson estimated that the shooting occurred approximately 30-45 minutes after Mack made a call on his cell phone.

Testimony of Detective Burns

New Orleans Police Department Detective Kevin Burns, Jr., testified on behalf of the State at trial. After arriving on the scene of the crime, he interviewed Bradley, McKinney, and Ronald Ruffin, who was also at the bar that night. Other officers interviewed Nelson and Calloway the night of the shooting; Detective Burns spoke with Calloway the following morning.
| ¿Detective Burns testified regarding photographic lineups of Jackson that were compiled and shown to Bradley, Nelson, and Calloway. Without testifying as to what any of the witnesses told him, Detective Burns explained that he obtained arrest warrants for Jackson for the first degree murder of Mark Westbrook and attempted first degree murder of Ms. Cal-loway after displaying the lineups to these witnesses.
Detective Burns also testified concerning statements made by Jackson after his arrest. Jackson told the detective that he heard that Samuel Mack had killed Mark Westbrook. He personally denied any role in the shooting and claimed that he *1159 was at a hotel in Slidell when the shooting occurred. Jackson was able to identify Mack in a photographic lineup and said that the two had been friends for twenty years.
During questioning Jackson also blurted out, “Terakeitha Calloway is not coming to court anyway, so I’m straight.” When Detective Burns asked Jackson who Calloway was, he replied that she was the victim who had been shot at the bar. Jackson claimed he knew this because he had read it in The Times-Picayune the day after the shooting. In response, Detective Burns told Jackson that victims’ names are not placed in the newspaper until family members are notified; he testified that because of this, he believed that Jackson was lying. Jackson also told the detective that he lived across the street from Ms. Calloway. Calloway, in fact, did not testify at trial.
| BOther corroborating evidence
Cell phone records were introduced at trial to corroborate testimony by Nelson and Bradley, who each testified that they observed Samuel Mack on his cell phone around the time of his argument with Westbrook. These records confirmed that a total of eleven calls were placed between Jackson and Mack around the time of the shooting. In addition, five of these calls were made within thirty minutes of the shooting.
The coroner’s testimony also corroborated that of Nelson and Bradley. He explained that Mark Westbrook suffered two shotgun wounds. The fatal blast entered the back of his neck at the base of the skull and came out of his right cheek. A second bullet went into Westbrook’s left shoulder and came out of his chest. The coroner was of the opinion that the shots were inflicted at close range because he observed small particles of gun powder on Westbrook’s skin below the hole entry point. Both Nelson and Bradley testified to looking up after hearing the first gun shot and then observing Jackson fire the second shot from behind Westbrook.
LAW AND ANALYSIS
Assignment of Error No. 1
In his first assignment of error, the defendant challenges the constitutionality of Louisiana Code of Criminal Procedure Article 782, which states in pertinent part, “Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a | (¡verdict.”[1] The defendant’s argument is based on the Fourteenth Amendment of the United States Constitution, which he claims guarantees defendants in Louisiana the same due process rights that defendants in other states receive. He also argues that the Sixth Amendment right to a trial by jury requires a unanimous jury verdict, citing McDonald v. City of Chicago, — U.S. -, 130 S.Ct. 3020, 3035, n. 14, 177 L.Ed.2d 894 (2010).[2]
The defendant claims that Louisiana is one of only two states that allow a person to be convicted of a felony by less than a *1160 unanimous verdict.[3] He points out that this non-unanimity rule was adopted by the state at its 1898 constitutional convention. Of relevance, he argues, the “mission” of the convention was “to establish the supremacy of the white race.” [4] The convention was also “called together by the people of this State to eliminate from the electorate the mass of corrupt and illegitimate voters who have during the last quarter of a century degraded our politics.”[5]
The defendant further claims that comprehensive empirical research affirms the wisdom of requiring unanimous verdicts. For instance, he points out that the American Bar Association has recommended that unanimous verdicts be required in all criminal jury trials. Studies examined by the American Bar Association “suggest that where unanimity is required, jurors evaluate evidence more thoroughly, spend more time deliberating, and take more ballots.” American Bar ^Association, American Jury Project, Principles for Juries and Jury Trials, p. 24. The ABA’s American Jury Project further concluded that “[a] non-unanimous decision rule allows juries to reach a quorum without seriously considering minority votes, thereby effectively silencing those voices and negating their participation.” Id. at 24.
In Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the United States Supreme Court held that juries in state courts may convict a defendant by less than a unanimous verdict even though federal law requires unanimous juries in federal criminal cases. The majority in a 4-1-4 plurality decision held that the Sixth and Fourteenth Amendments do not prohibit states from securing convictions on less than unanimous verdict in non-capital cases. Justice Powell concurred for different reasons. Four other justices disagreed with the decision, finding that the Sixth Amendment guarantee of a jury trial made applicable to the states by the 14th Amendment did mandate unanimous juries. The defendant argues that legal developments and academic studies since the Apodaca decision was handed down call the judgment by a five-vote majority into serious question and make it ripe for Louisiana courts to now deem Article 782 unconstitutional.
Although the defendant makes a well-reasoned and compelling argument in support of his position that there are disparities inherent in non-unanimous juries that should be remedied, this Court is constrained by the most recent pronouncement of the Louisiana Supreme Court in State v. Bertrand, 08-2215, p. 8 (La.3/17/09), 6 So.3d 738, 743, which upheld the constitutionality of Article 782.[6] |sIn State v. Bertrand, supra, the Louisiana Supreme Court overturned two lower court judgments which had declared Arti *1161 cle 782 unconstitutional. In doing so it stated: “Due to this Court’s prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court’s still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments.” This Court has repeatedly followed the Supreme Court’s lead in Bertrand.[7]
Accordingly, this assignment of error is without merit.
Assignment of Error No. 2.
The issues raised by the defendant’s second assignment of error are governed by the Confrontation Clause of the Sixth Amendment of the U.S. Constitution, which guarantees the right of a criminal defendant to be confronted with the witnesses against him.[8] This includes the right to confront and cross examine witnesses and the right to present a defense.[9] The defendant specifically argues that the consequences of the trial court’s evidentia-ry rulings as to the admissibility of hearsay testimony and evidence resulted in the denial of defendant’s constitutional right to: (1) present a defense; (2) produce evidence in rebuttal; (8) engage in cross examination to test the State’s evidence; (4) present 19his version of the facts to the jury; and (5) assert that someone else committed the crime. The defendant cites several instances in the trial proceedings whereby he alleges the trial court’s eviden-tiary rulings constitute reversible error.
For the reasons outlined below, we find no abuse of discretion in the trial court’s evidentiary rulings under the Sixth Amendment.

Hearsay nature of cross examination testimony

One of the major arguments the defendant makes is that his constitutional rights were violated because the State failed to call witnesses for trial who gave statements that conflicted with the State’s theory of the case, and the defense was not allowed to cross examine witnesses regarding these inconsistencies. He claims that this also prevented him from being able to effectively present his defense of misiden-tification by the State’s witnesses.
In support of this position, the defendant claims that he was not allowed to cross examine Detective Burns regarding statements made by Ruffin relating to the crime scene and other evidence; evidence relating to lineups shown to Ruffin and McKinney; Ruffin’s alleged misidentification of Mack; McKinney’s identification of the shooter; or other information by McKinney that was inconsistent with other witnesses. He also complained that he was not allowed to cross examine Nelson regarding information he may have heard *1162 Ruffin say about the incident. To support his position, the defendant relied on testimony elicited during the motion to suppress that defendant was not able to subsequently bring out at trial. The trial court excluded this evidence largely on the grounds that it was impermissible | inhearsay. A review of the record does not support the defendant’s allegations that his Sixth Amendment rights were violated in this regard.

Compelling circumstances rule

This court has recognized that under “compelling circumstances,” a defendant’s right to present a defense may require admission of statements which do not fall under any statutorily recognized exception to the hearsay rule. State v. Fernandez, 09-1727 (La.App. 4 Cir. 10/6/10), 50 So.3d 219, 228-29; State v. Van Winkle, supra; State v. Gremillion, 542 So.2d 1074 (La.1989). This right to present a defense, however, does not require the trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. Fernandez, 50 So.3d at 229; State v. Mosby, 595 So.2d 1135 (La.1992); La. C.E. art. 403. Louisiana Code of Evidence Article 103(A) further provides that an error may only be predicated upon a ruling which excludes evidence if a substantial right of the party is affected. Fernandez, 50 So.3d at 229.
In State v. Van Winkle, supra, a leading case on this issue, the defendant was a mother accused of murdering her 12-year old son. She alleged that the trial court erred by not allowing her to question witnesses regarding her defense theory that her boarder was a homosexual predator who killed her son with the assistance of his lover. Specifically, she complained that she was prevented from questioning the boarder regarding his sexual lifestyle; from questioning the coroner about the condition of her son’s anus; from questioning the chemist regarding the absence of seminal fluid; and from questioning bartenders on whether a bar frequented by the boarder was predominately a gay bar. The Supreme Court found that these | n evidentiary rulings had the effect of preventing the defendant from presenting her defense. It stated, “Evidentiary rules may not supersede the fundamental right to present a defense.” Id. at 202.
In reaching this conclusion, the Supreme Court relied on its opinion in State v. Gremillion, supra. In Gremillion, the defendant wanted to introduce evidence that other third parties were responsible for the victim’s murder. To this end, the defendant sought to introduce evidence of a statement wherein the victim told an investigator that he had been beaten and attacked by three white males. The trial court found that the evidence was inadmissible hearsay. The Louisiana Supreme Court agreed that it was hearsay, but found that it should have been admitted under U.S. Supreme Court jurisprudence holding that normally inadmissible hearsay evidence may be admitted if it is reliable, trustworthy, and relevant, and if to exclude it would compromise the defendant’s right to present a defense. Gremillion, 542 So.2d at 1078 (citing Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973)).
In the present case, the evidentiary rulings complained of did not rise to the level of an impingement of the defendant’s right to present a defense at trial. Instead, they primarily related to the admissibility of out of court statements given by Ruffin and McKinney — two witnesses the defendant could have called to testify at trial and did not.
Louisiana Code of Evidence Article 801(C) defines hearsay as “a statement, *1163 other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” See State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801. Hearsay is ordinarily not | ^admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. Moreover, a trial court’s ruling on the admissibility of evidence will not be disturbed in the absence of a clear abuse of the trial court’s discretion. State v. Bell, 05-0808, p. 12 (La.App. 4 Cir. 12/6/06), 947 So.2d 774, 781; State v. Lewis, 97-2854, p. 20 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004, 1017. A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. State v. Hall, 02-1098, p. 8 (La.App. 4 Cir. 8/19/03), 843 So.2d 488, 496.
The evidence in this case reveals that the victim, Westbrook, was involved in two separate altercations: one with “Rock” McKinney and one with Samuel Mack. There is no evidence that the victim was ever involved in an altercation with the defendant, Jackson. The evidence reveals that the shooting and the prior altercations all occurred at the bar and that several bar patrons were interviewed. In light of these circumstances, it is quite conceivable that some of the bar patrons gave various descriptions of the possible suspect. The fact that the State chose to only call witnesses that the detectives concluded witnessed the shooting itself, or who supported the State’s theory of the case, does not deprive the defendant of the opportunity to call others as witnesses. Instead, the defendant had the right to call as witnesses those patrons who supported his theory of the case.
In Van Winkle, the defendant actually called witnesses whose testimony would support her theory of the case. There, the trial court essentially impinged on her right to present a defense by not allowing her to question the defense witnesses regarding evidence that someone else may have committed the crime. In Gremillion, the victim was not available because he had been murdered, and none |1sof the exceptions to the hearsay rule applied. In these cases, but for the evidentiary rulings of the trial court, the defendants had no other way to present their defenses at trial.
That is not what occurred in this case. There is no evidence that Jackson made any attempt whatsoever to call Ruffin or McKinney as witnesses at trial; there is also no evidence that the actions of the trial court or the state prevented him from calling them as witnesses. The defendant cannot now rely on a compelling circumstances exception to salvage a defense that could have been presented at trial if the defendant had simply called as witnesses the patrons whose statements he wanted admitted in support of his defense. Under the circumstances of this case, the defendant’s rights to confront and cross examine the State’s witnesses and to present a defense were not violated by the evidentia-ry rulings of the trial court.

Non-testimonial statements

The defendant also argued that he should have been able to cross examine the State’s witnesses regarding assertions made by non-testifying witnesses pursuant to Michigan v. Bryant, — U.S. -, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011), because the statements were made by the witnesses while detectives were still looking for the perpetrator, and the statements were therefore not hearsay. Defendant’s reliance on Bryant is misplaced. In Bryant, the Supreme Court concluded that statements resulting from an interrogation were non-testimonial because the primary *1164 purpose of the interrogation was to enable police to deal with an ongoing emergency (i.e., a wounded crime victim who died before trial). It held |14that such non-testimonial statements do not violate the Confrontation Clause of the Sixth Amendment.
The Bryant Court, however, was careful to explain that a finding that a statement does not violate the Confrontation Clause does not automatically make it admissible under state laws governing the admissibility of hearsay evidence. The Court noted, “the admissibility of a statement is a concern of state and federal rules of evidence, not the Confrontation Clause.” Id., 131 S.Ct. at 1155. The Court then remanded the case to the lower court for a determination of “whether the statements’ admission was otherwise permitted by state hearsay rules.” Id. at 1167.
Under the facts and circumstances of the present case, this Court finds that the trial court did not err in sustaining the State’s objections to defense attempts to introduce hearsay testimony of non-testifying witnesses under the Louisiana Rules of Evidence. Furthermore, even if there was error in not allowing the defendant’s line of questioning, confrontation claims are subject to a harmless error analysis. State v. Moore, 10-0314, p. 7 (La.App. 4 Cir. 10/13/10), 57 So.3d 1033, 1038-39.

Indirect hearsay testimony

The defendant also asserts that his constitutional rights were violated when the trial court allowed “indirect” hearsay testimony of Bradley, Nelson, and Callo-way to be admitted into evidence. He claims that this evidence was introduced “indirectly” because the court allowed Detective Burns to testify regarding photographic lineups that were shown to each of these witnesses. Citing State v. Veals, 576 So.2d 566 (La.App. 4th Cir.1991), as authority for the exclusion of “indirect” hearsay testimony, the defendant argues that the State | ^improperly elicited testimony from the detective in two parts that, when considered together, would have permitted the jury to logically infer information that would have been inadmissible hearsay if testified to directly at trial.
A review of the trial transcript confirms that Detective Burns testified to compiling photographic lineups of Jackson that were shown Bradley, Nelson, and Calloway. The lineups presented to Nelson and Bradley were admitted without objection, while the defendant successfully objected to the third lineup being introduced into evidence.[10] Detective Burns then testified that he obtained a warrant for Jackson after showing the lineups to the witnesses. Defense counsel objected, the trial court sustained the objection, and the court instructed the jury to disregard the testimony. This Court finds that the defendant’s rights were not violated by virtue of this line of questioning regarding the photographic lineups.
This Court has previously explained that “[t]he fact that the jury could infer that someone may have made a statement implicating the appellant does not automatically make the statement hearsay.” State v. Bagneris, 01-0910, p. 4 (La.App. 4 Cir. 12/19/01), 804 So.2d 831, 834. In addition, “it is obvious whenever a defendant’s photograph is included in a lineup that the defendant somehow came under suspicion; otherwise, his photograph would not have been included.” Id. We explained that “[t]his permissible inference does not make *1165 the statement hearsay.” Id. A witness’ act of selecting a picture of a suspect from a photographic lineup presented by police is not hearsay because it constitutes a statement of identification as contemplated by La. C.E. art. 801(D)(1)(c), which provides:
|lfiA statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... [o]ne of identification of a person made after perceiving the person.
Because Nelson and Bradley both testified at trial and were subject to cross examination concerning any statement made by them identifying the defendant as the shooter, their identifications of the defendant were not impermissible hearsay.
This issue was recently addressed in State v. Duncan, 11-0563, p. 19 (La.App. 4 Cir. 5/2/12), 91 So.3d 504, 516-17, wherein we explained that officers’ testimony as to witnesses’ identification of a defendant— “both in their respective statements as well as their assertions in selecting the defendant in ... photo lineups” — is not hearsay. Instead, such statements “may be used assertively, as substantive evidence of guilt, and may be established through the testimony of the person to whom the statement was made, even if the witness denies making an identification or fails to make an in-court identification.” Duncan, 91 So.3d at 516.
We find that the trial court did not err in allowing Detective Burns to testify regarding the fact that he showed the lineups to the witnesses, and thereafter took action based on what they told him. Because Detective Burns’ testimony did not amount to inadmissible hearsay, the defendant’s Sixth Amendment right to confrontation was not violated.
Moreover, to the extent that the defendant may be complaining that Detective Burns’ testimony “indirectly” placed hearsay testimony of Calloway into evidence, this allegation is not supported by the record. Defendant admits that Detective Burns did not testify regarding what Cal-loway said during the lineup. |17He also did not suggest that Calloway positively identified the defendant in the photographic lineup presented to her. Instead, after testifying that he presented photographic lineups of the defendant to each Calloway, Nelson, and Bradley, all subsequent questioning and testimony related solely to the lineups presented to Nelson and Bradley.

Newspaper evidence

Lastly, the defendant claims that the trial court impinged on his Sixth Amendment rights by preventing him from showing Detective Burns newspaper accounts of the shooting during cross examination.
During cross-examination, defense counsel asked Detective Burns whether “it’s a fact that [he] told the public information officer that Sam Mack was the shooter in this case,” to which the detective responded, “No.” He then asked the detective if he saw that information in the newspaper. The response was again, “No.” Defense counsel then asked, “Detective, if I showed you the newspaper article, would that refresh your recollection?” At that point, the State objected and the court sustained its objection.
Defense counsel pointedly asked Detective Burns if showing him a newspaper article would refresh his memory despite the fact that the detective had already said he never saw a newspaper article which said that Sam Mack was the shooter. Now, on appeal, the defendant claims that the paper was being introduced for impeachment purposes. Newspaper articles are considered self-authenticating docu- *1166 merits and there is ordinarily no need to show evidence of authenticity prior to admitting as evidence at trial pursuant to La. C.E. art. 902(6). See, e.g., Spears v. Grambling State University, 12-0398 (La.App. 1 Cir. 12/17/12), 111 So.3d 392, 2012 WL 6560600. Generally, a trial court’s ruling as to the admissibility of evidence will not be disturbed absent a clear abuse of discretion. State v. Cyrus, 11-1175, p. 20 (La.App. 4 Cir. 7/5/12), 97 So.3d 554, 565, citing State v. Richardson, 97-1995, p. 14 (La.App. 4 Cir. 3/3/99), 729 So.2d 114, 122. In addition, at least one case has held that evidence should not be admitted to refresh a witness’ recollection where the witness has never actually expressed a desire to have their memory refreshed from the document. State v. Collins, 546 So.2d 1246, 1262 (La.App. 1st Cir.1989). Accordingly, we find that the trial court acted within its discretion by sustaining the State’s objection regarding using the paper to attempt to refresh the detective’s memory.
Considering all the relevant factors and evidence presented in this case, this Court finds that there is no evidence that the guilty verdict rendered was attributable in any way to any confrontation or compulsory process errors complained of by the defendant. There is no merit to this assignment of error.
Assignment of Error No. 3.
In the defendant’s third assignment of error, he argues that the trial court allowed the State to make impermissible comments during closing arguments, which tainted the jury against defense counsel and created reversible error. In particular, he claims that the prosecutor made it appear that the defense was deceitful and that the defense was hiding things from the jury.
Pursuant to La.C.Cr.P. art. 774, the scope of closing argument should be confined to the evidence admitted, the lack of evidence, conclusions of fact that the | i9State or defendant may draw therefrom, and the law applicable to the case. The State’s rebuttal shall be confined to answering the argument of the defendant. Id.
While prosecutors have wide latitude with regard to tactics used during closing arguments, they should not appeal to prejudice and should refrain from making personal attacks on defense strategy and counsel. State v. Manning, 03-1982, p. 75 (La.10/19/04), 885 So.2d 1044, 1108; State v. Brumfield, 96-2667, p. 9 (La.10/20/98), 737 So.2d 660, 666. Nevertheless, even where a prosecutor exceeds that wide latitude, the reviewing court will not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the guilty verdict. State v. Taylor, 93-2201, p. 7 (La.2/28/96), 669 So.2d 364, 369.
A trial court has broad discretion in controlling the scope of closing arguments, and Louisiana courts have consistently held that great consideration should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence, heard the arguments, and repeatedly been instructed by the trial judge that arguments of counsel are not evidence. State v. Casey, 99-0023, p. 17 (La.1/26/00) 775 So.2d 1022, 1036; State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250, 258.
During rebuttal, the prosecutor compared the defense to Muhammad Ali— a “master of distraction” who would use fancy footwork and talking during fights to distract his opponents. We find that the trial court did not err in overruling the defendant’s objection to the prosecution’s Ali analogy because similar arguments by prosecutors have been upheld by Louisiana courts. For instance, in State v. Martin, *1167 539 So.2d 1235, 1240 (La.1989), the Louisiana Supreme Court held that |20closing argument referring to “smoke screen” tactics by the defense was not improper.
The prosecutor in the present case further stated, “Remember that arrest register they showed you? Well, you know what, you all remember, you all remember this. Too late to hide it now because /all saw it and /all remember it.” Following this comment, the trial court sustained defendant’s objection and admonished the jury to disregard the remark about hiding something. We find that there was no error in this regard.
Referring to Jackson’s statement to Detective Burns that Terakeitha Calloway would not come to court, the prosecutor asked, “[W]hy wouldn’t I want somebody who has been shot, who’s been shot, to come to court and say I didn’t shoot them?” This question rhetorically commented on the facts of the case and inferences that could be drawn therefrom, and was therefore not impermissible.
Other comments cited as improper by the defendant either could not be found in the record, or are not properly before us on appeal because defense counsel did not contemporaneously object at trial. Code of Criminal Procedure Article 841 provides in pertinent part, “An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” See also, State v. Clark, 332 So.2d 236 (La.1976).
Considering the record as a whole, we find that none of the prosecutor’s comments contributed to the verdict or created reversible error. Therefore, this assignment of error has no merit.
| ^DECREE
For the reasons stated above, and upon a finding of no errors patent on the face of the record on appeal, the defendant’s conviction and sentence are affirmed.
AFFIRMED
LANDRIEU, J., concurs in the result.

. The defendant also cites La. Const. Art I, § 17, which provides in relevant part: "A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried by a jury of twelve persons, ten of whom must concur to render a verdict.”

. The defendant initially filed a motion to require a unanimous verdict, which was denied by the trial court. The defendant renewed his objection to a non-unanimous verdict in his motion for a new trial; the court again rejected this argument.

. See Or. Const. art. I § 11; Or.Rev.Stat. § 136.450.

. See Official Journal of the Proceedings of the Constitutional Convention of the State of Louisiana, at 374 (Statement of Hon. Thomas J. Semmes). It was further proclaimed that the "mission was, in the Erst place, to establish the supremacy of the white race in this State to the extent to which it could be legally and constitutionally done.” Id. at 375.

. Id. at 9 (Statement of Hon. E.B. Kruttsch-nitt).

.The defendant cites Bertrand, supra, as authority claiming that the Louisiana Supreme Court took note of an insidious racial component of non-unanimous juries. To the contrary, the court took note that the defendant raised that as an issue in that case, but that it had already been considered by the court in Apodaca. Bertrand, 6 So.3d at 743. Therefore, defendant’s reliance on Bertrand as authority for this position is misplaced.

. See, e.g., State v. Krodinger, 12-0134, p. 11 (La.App. 4 Cir. 2/27/13), -So.3d -, 2013 WL 749708 (unpublished); State v. Bonds, 11-1674, p. 2 (La.App. 4 Cir. 10/3/12), 101 So.3d 531, 532; State v. Williams, 11-1547, p. 9-10 (La.App. 4 Cir. 9/26/12), 101 So.3d 104, 111.

. The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant “to be confronted with the witnesses against him.” The United States Supreme Court has held that this guarantee, which is extended to the States by the Fourteenth Amendment, includes the right to cross-examine witnesses. Cruz v. New York, 481 U.S. 186, 189, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987); State v. Collins, 10-0757 (La.App. 4 Cir. 5/11/11), 65 So.3d 271, 286.

. State v. Van Winkle, 94-0947, p. 5 (La.6/30/95), 658 So.2d 198, 201.

. The defendant claims that the line-up shown to Calloway was admitted over defense's objection. Instead, it was later introduced by the State for record keeping purposes only. The jury never saw it.